THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEVE LEWIS, | CASE NO. 19-0314-JCC |
| Plaintiff, | ORDER |
| v. | |
| RICHARD PHAN and LINH D. PHAN, | |
| Defendants. | |

This matter comes before the Court on Plaintiff's motion for summary judgment (Dkt. No. 18) and Defendants' motion for summary judgment (Dkt. No. 22). Having considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part Plaintiff's motion and DENIES Defendants' motion for the reasons explained herein.

**I.    BACKGROUND**

Defendants own real property located at 303 12th Ave. S, Seattle, Washington. (Dkt. No. 22 at 2.) Defendants renovated the building located on their property in 2002, dividing one large space into five separate retail spaces. (*Id.*) Each retail space has its own entrance from the public sidewalk. (*Id.*) The primary function areas in all five spaces are located above the sidewalk grade. (Dkt. No. 23 at 3.) Consequently, stairs are required to access the primary function areas of the retail spaces when approached from their public entrances. (*Id.*)

Defendants lease one of the five retail spaces located on their property to a restaurant, Dong Thap Noodles. (Dkt. Nos. 18 at 2, 22 at 2.) In 2018, Plaintiff attempted to patronize Dong Thap Noodles. (Dkt. No. 18 at 2.) Plaintiff requires a wheelchair for mobility; consequently, he was unable to ascend the stairs and dine at the restaurant. (*Id.*) Plaintiff brings discrimination claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C § 12101 *et seq.*, and Washington's Law Against Discrimination ("WLAD"), Wash. Rev. Code. ch. 49.60. Specifically, Plaintiff claims Defendants failed to comply with applicable accessibility standards under the ADA and the WLAD when they renovated the spaces in 2002 and did not create wheelchair accessible entrances. (Dkt. No. 18 at 2–3.)

Plaintiff now moves for summary judgment on his discrimination claims. (*See* Dkt. No. 18.) In their response to Plaintiff's motion for summary judgment, Defendants also move for summary judgment on both of Plaintiff's claims. (*See* Dkt. No. 22.)

## II. DISCUSSION

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Id.* at 255.

"The moving party bears the initial burden of establishing the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). "In such a case, the

nonmoving party may defeat the motion for summary judgment without producing anything." *Id.* at 1103.

Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 324.

**B.     Discrimination by a Place of Public Accommodation Under the ADA**

Title III of the ADA prohibits places of public accommodation from denying disabled persons "opportunities to participate in goods and services provided by an entity, and from offering disabled persons goods and services that are not equal to those provided to non-disabled customers." 42 U.S.C. § 12182(b)(1)(A)(i)–(ii). To prevail on a Title III discrimination claim, a plaintiff must show that (1) he or she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his or her disability. *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010) (citing 42 U.S.C. § 12182(a)). The Court considers each element in turn.

*1.   Disabled Under the ADA*

Both parties move for summary judgment on the first element of Plaintiff's ADA claim. (*See* Dkt. Nos. 18 at 4, 22 at 5.) The Court finds that Plaintiff presented sufficient evidence entitling him to summary judgment on this element.

To satisfy the first element of his ADA claim, Plaintiff must show that he has a qualifying disability under the ADA. *See* 42 U.S.C. § 12182. The ADA defines "disability" as

1  "(A) a physical or mental impairment that substantially limits one or more major life activities of
2  such individual; (B) a record of such an impairment; or (C) being regarded as having such an
3  impairment." *Id.* § 12102(1). "[M]ajor life activities include, but are not limited to, caring for
4  oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting,
5  bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and
6  working." *Id.* § 12102(2)(A).

Here, Plaintiff offers uncontroverted evidence that his walking is substantially limited. In his declaration, Plaintiff states that he is "limited in the major life activity of walking and . . . currently use[s] a manual wheelchair for mobility." (Dkt. No. 19 at 1.) Defendants do not rebut Plaintiff's statement with admissible evidence or even dispute his statement. (*See* Dkt. No. 22 at 5.) Instead, Defendants argue that Plaintiff "has not specified the degree to which he claims to be 'limited.'" (*Id.*) But that is incorrect: Plaintiff says that he is so limited that he "currently use[s] a manual wheelchair for mobility." (Dkt. No. 19 at 1.) A person's ability to walk is "substantially limited" if they must use a wheelchair for mobility. Thus, Plaintiff has introduced admissible evidence entitling him to summary judgment, and Defendants have failed to contradict that evidence. *See Celotex Corp.*, 477 U.S. at 324. The Court therefore GRANTS Plaintiff's motion and DENIES Defendants' motion for summary judgment on this element.

*2. Place of Public Accommodation*

Plaintiff moves for summary judgment on the second element of his discrimination claim, and Defendants do not dispute that element in their motion. (*See* Dkt. Nos. 18 at 4–5, 22 at 6.) To establish the second element, Plaintiff must show that Defendants constitute "a private entity that owns, leases, or operates a place of public accommodation." 42 U.S.C. § 12182(a). "A restaurant, bar, or other establishment serving food or drink" is considered a public accommodation. *Id.* § 12181(7)(B). Here, Defendants lease part of their building to Dong Thap Noodles, a restaurant that serves food and drink. Consequently, Defendants are a "private entity that . . . leases . . . a place of public accommodation." *Id.* § 12182(a). The Court therefore

GRANTS Plaintiff's motion for summary judgment on this element.

### 3. *Denied Public Accommodations Because of a Disability*

Both parties move for summary judgment on the third element of Plaintiff's discrimination claim. (*See* Dkt. Nos. 18 at 9, 22 at 4.) The Court concludes that summary judgment is inappropriate at this time given the parties' briefing and minimal evidence about whether it was feasible for Defendants to make their building wheelchair accessible.

#### i. *Legal Standard*

The third element—whether the plaintiff was denied public accommodations on the basis of disability—is met if the defendant violated an applicable accessibility standard. *See Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 945 (9th Cir. 2011). Title III accessibility standards come in three broad categories: (1) the "new construction" provisions, which apply to public accommodations constructed after January 26, 1992; (2) the "alteration" provisions, which apply to post-January 26, 1992 alterations to buildings that existed as of that date; and (3) the "readily achievable" provisions, which apply to unaltered portions of buildings constructed before January 26, 1992. *See Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 847 (N.D. Cal. 2011) (citing 42 U.S.C. §§ 12181(9), 12183(a)(1)–(2)).

Here, the parties do not dispute that Defendants' building existed as of January 26, 1992, and that Defendants altered it in 2002. (*See* Dkt. Nos. 18 at 2–3, 22 at 2.) Nevertheless, Defendants contend that the applicable legal standard is contained in the "readily achievable" provisions. (*See* Dkt. No. 22 at 4–5.) This is incorrect. The readily achievable standard applies to buildings that existed before January 26, 1992, and that were not subsequently altered. *See* 42 U.S.C. § 12181(9). The building at issue was altered in 2002 when Defendants divided the single existing space "into its current configuration of five small retail spaces." (*See* Dkt. Nos. 22 at 2, 23 at 1–2.) Based on the uncontroverted facts of this case, the alteration provisions of Title III contain the applicable accessibility standards. *See* 42 U.S.C. § 12183(a)(2); *Moeller*, 816 F.Supp.2d at 847.

*ii. Summary Judgment*

When a place of public accommodation is altered, the alteration provisions impose two distinct requirements. *See* 42 U.S.C. § 12183(a)(2); *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 371 (2d Cir. 2008). First, the alteration itself "shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." 28 C.F.R. § 36.402(a). "[T]he phrase 'to the maximum extent feasible' . . . applies to the occasional case where the nature of an existing facility makes it virtually impossible to comply fully with applicable accessibility standards." 28 C.F.R. § 36.402(c). The plaintiff bears the initial burden of identifying some manner in which the defendant could have made the alteration readily accessible and usable by people with disabilities. *See Roberts*, 542 F.3d at 371–72 (citing 42 U.S.C. § 12183; 28 C.F.R. § 36.402). "[T]he defendant then bears the burden of persuading the factfinder that the plaintiff's proposal would have been 'virtually impossible' in light of the 'nature of the facility.'" *Id.* at 372.

Second, "[i]f alterations involve an area containing a 'primary function,' then work must be done to create an accessible path of travel from the building exterior to the altered area." *Disabled in Action of Metro. N.Y. v. Trump Intern. Hotel & Tower*, 2003 WL 1751785, slip op. at 5 (S.D.N.Y. 2003) (citing 28 C.F.R. § 36.403; 28 C.F.R. Pt. 36, app. A, ADAAG 4.1.6(2)). The extent of the work required to make an accessible path depends on how much that work would cost. *See* 28 C.F.R. § 36.403(f)–(g). If the cost of creating an accessible path would be less than 20% of the cost of the alteration to the primary function area, then the path of travel must be made accessible. *See id.* § 36.403(f). If the cost would exceed 20% of the cost of the alteration to the primary function area, then the path of travel "shall be made accessible to the extent that it can be made accessible without incurring disproportionate costs." *See id.* § 36.403(g). The plaintiff's and defendant's respective burdens are the same for the second requirement of the alteration provisions as they are for the first. *See Roberts*, 542 F.3d at 372.

Based on the parties' briefing, the Court cannot determine which requirement applies. The parties appear to assume that this case concerns the second requirement. (*See* Dkt. Nos. 22 at 4, 24 at 4–5.) The second requirement would apply if Defendants altered only the primary function area of their building. In that case, Defendants would be required to create an accessible path to the primary function area "to the extent that it can be made accessible without incurring disproportionate costs." *See* 28 C.F.R. § 36.403(g). But Defendants appear to have altered the path of travel to their building itself when they converted a single space into five new spaces and added a separate entrance to each new space. (*See* Dkt. Nos. 22 at 2, 23 at 1–2.) If Defendants did, in fact, alter the entrance to the building itself, then 28 C.F.R. § 36.402 would seem to require Defendants to have made the new entrances accessible "to the maximum extent feasible." *See* 28 C.F.R. § 36.402(a); *Venus v. Seville Food, LLC*, 2017 WL 2364192, slip op. at 16 (D.N.J. 2017). However, it would be premature to decide what requirement applies without briefing from the parties.

Even if it were clear which requirement applies, neither party would be entitled to summary judgment because both parties rely on conclusory statements to support their motions. On the one hand, Plaintiff's motion fails because he offers no evidence—not even a single declaration—in support of his contention that "Defendants easily could have created . . . a wheelchair accessible entrance." (Dkt. No. 18 at 9); *see also Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1103. On the other hand, Defendants' motion fails because, under either standard, their evidence is not sufficient to entitle them to summary judgment. Under the first requirement, Defendants have not provided enough evidence to demonstrate that an ADA-compliant alteration was virtually impossible. Under the second requirement, Defendants have provided some, but not enough, evidence to demonstrate that the new entrances were made accessible to the

maximum extent feasible under a disproportionality analysis. *See Venus*, 2017 WL 2364192 at 16.

The Court therefore DENIES Plaintiff's motion and DENIES Defendants' motion for summary judgment on this element.

**C.     Discrimination by a Place of Public Accommodation Under the WLAD**

The elements of discrimination under the ADA and WLAD are similar, and "courts may look to Title III of the [ADA] and interpretation of that provision as one source of guidance in adjudicating WLAD cases." *Wash. State Commc'n Access Project v. Regal Cinemas, Inc.*, 293 P.3d 413, 422 (2013); *see also Kees v. Wallenstein*, 161 F.3d 1196, 1199 (9th Cir. 1998) (holding that courts should employ the same analysis to evaluate claims under the ADA and the WLAD). Under the WLAD, Plaintiff must show that (1) he has a disability; (2) the Defendants' establishment is a place of public accommodation; (3) Defendants failed to provide him with services comparable to those they provide to people without disabilities; and (4) his disability was a substantial factor causing the discrimination. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

Plaintiff moves for summary judgment on all four elements, and Defendants move for summary judgment on one element.[1] The Court considers each element of Plaintiff's discrimination claim in turn.

*1.   Disabled Under the WLAD*

Plaintiff moves for summary judgment on the first element of his WLAD claim, and

---

[1] In their motion, Defendants argue "structural modifications to make any place accessible are only required to the extent that *other law* requires such modification." (Dkt. No. 22 at 6.) This is true, but the "other law" referenced in Defendants' uncited proposition includes the accessibility requirements contained in the ADA. *See* Wash. Admin. Code § 162-26-100. Receiving a permit from the City of Seattle does not mean that an alteration complies with applicable federal and state accessibility laws—and Defendants have not cited any law to demonstrate that it does. (*See* Dkt. No. 22 at 6.) Moreover, this argument does not seem applicable to any specific element of Plaintiff's discrimination claim under the WLAD.

Defendants do not dispute that this element is met in their motion. (*See* Dkt. Nos. 18 at 6; 22 at 6.) To establish the first element of his discrimination claim, Plaintiff must demonstrate that he has a disability. Under the WLAD, a disability is defined as "the presence of a sensory, mental, or physical impairment that is medically cognizable or diagnosable." Wash. Rev. Code § 49.60.040(7)(a)(i). Washington courts construe the meaning of disability broadly. *See, e.g.*, *Clipse v. Commercial Driver Servs., Inc.*, 358 P.3d 464, 473 (2015) ("[U]nder the plain language of the [WLAD], any mental or physical condition may be a disability.").

As previously noted, Plaintiff's ability to walk is impaired to the level that he requires a wheelchair for mobility. (*See* Dkt. No. 18 at 6.) This is a "physical impairment that is medically cognizable." Wash. Rev. Code § 49.60.040(7)(a)(i). Thus, Plaintiff has established the first element of his WLAD claim. The Court therefore GRANTS Plaintiff's motion for summary judgment on this element.

   *2. Place of Public Accommodation*

Both parties move for summary judgment on the second element of Plaintiff's WLAD claim. However, additional briefing by the parties is necessary to decide this issue, as it is a question of Washington statutory interpretation.

Although similar to the definition provided in ADA, the WLAD's definition of a place of public accommodation appears to be slightly narrower. Under the WLAD, a public accommodation is defined as "any place, licensed or unlicensed, kept for gain, hire, or reward, or where charges are made for admission, service, occupancy, or use of any property or facilities." Wash. Rev. Code § 49.60.040(2). Places "where food or beverages of any kind are sold for consumption on the premises" are considered public accommodations under the WLAD. *Id.*

Here, the parties propose different interpretations of the meaning of a public accommodation under the WLAD, and neither party adequately supports its argument with Washington law. First, Plaintiff conflates the ADA's definition with the WLAD's definition and presumes Defendants are liable as a place of public accommodation. (*See* Dkt. No. 18 at 6.)

Washington may consider Defendants to be a place of public accommodation because they lease their property to a place that serves food and beverages. Nonetheless, Plaintiff must support this proposed interpretation of the WLAD with Washington law before the Court will adopt it. *See, e.g.*, *Robey-Harcourt v. BenCorp Fin. Co.*, 326 F.3d 1140, 1143 (10th Cir. 2003) ("Parties must support their arguments with legal authority."); *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority . . . forfeits the point. We will not do his research for him.") (citations omitted). By contrast, Defendants focus on the differences in how the ADA and the WLAD define a public accommodation. (*See* Dkt. No. 22 at 6.) Defendants appear to argue that only service-providers can be liable for disability discrimination under the WLAD. (*See* Dkt. No. 22 at 6.) Defendants fail to provide any legal support for this position. Like Plaintiff, they must support their proposed interpretation of the statute with Washington law. *See Robey-Harcourt*, 326 F.3d at 1143; *Pelfresne*, 917 F.2d at 1023.

This element is a question of law, and the parties have not provided sufficient briefing to justify deciding the issue on summary judgment. The Court therefore DENIES Plaintiff's and Defendants' motion for summary judgment on this element.

        *3. Discrimination*

For the third element of Plaintiff's WLAD claim, Plaintiff argues that Defendants discriminated against him because he could not access the restaurant and was therefore denied comparable services. (*See* Dkt. No. 18 at 10.) Plaintiff's argument oversimplifies the requirements of the WLAD.

Like the ADA, the WLAD mandates that places of public accommodations provide "comparable" services to people with and without disabilities. *See Fell*, 911 P.2d at 1327–28 (1996). Moreover, like the ADA, the WLAD's broad mandate does not invariably require a place of public accommodation to make structural changes, modifications, or additions to make its services comparable (or even accessible). *See* Wash. Rev. Code § 49.60.215 ("[T]his section

shall not be construed to require structural changes, modifications, or additions to make any place accessible to a person with a disability except as otherwise required by law."). In fact, Wash. Admin. Code § 162-26-100 appears to specifically incorporate the ADA's alteration provisions, with the caveat that places of public accommodation must still make "reasonable accommodation to the needs of disabled persons." *See* Wash. Admin. Code § 162-26-100(2)–(3); *Paulsen v. PS Business Parks, LP*, No. C10-1031-MJP, Dkt. No. 32 at 7–8 (W.D. Wash. 2011) (concluding Wash. Rev. Code § 162-26-100(2) incorporates the ADA's "readily achievable" standard).

Here, a genuine dispute of fact exists as to whether Defendants violated the ADA's alteration provisions. In addition, Plaintiff has not argued that Defendants could have reasonably accommodated him—a fact dependent issue on which Plaintiff bears the burden of persuasion. *See* Wash. Rev. Code § 162-26-080(2) (listing factors that bear on the reasonableness of an accommodation); *Taylor v. Burlington N. R.R.*, 444 P.3d 606, 619 (Wash. 2019) ("[I]n a reasonable accommodation case, the employee must show . . . that the employer failed to reasonably accommodate them."); (Dkt. No. 18 at 10). Thus, Plaintiff is not entitled to summary judgment even though he was denied comparable services to customers without disabilities. The Court therefore DENIES Plaintiff's motion for summary judgment on this element.

    *4. Disability as Substantial Factor in Discrimination*

Plaintiff moves for summary judgment on the fourth element of his WLAD claim, asserting that his disability "is the only factor causing the discrimination." (*See* Dkt. No. 18 at 10.) To establish the fourth element of his WLAD claim, Plaintiff must demonstrate that his disability was a substantial factor causing the alleged discrimination. *See Duvall*, 260 F.3d at 1135 (9th Cir. 2001). This element is a question of fact. *See Fell*, 911 P.2d at 1328.

Here, Defendants do not deny that "the property cannot be entered in a wheelchair." (*See* Dkt. No. 18 at 10, 22 at 2, 6.) In other words, Plaintiff was not able to patronize the restaurant located on Defendants' property because a set of stairs is located in the restaurant's path of entry.

(Dkt. No. 18 at 2.) Solely because of his disability, Plaintiff was treated differently from individuals that do not require a wheelchair for mobility. Thus, Plaintiff has established the fourth element of his claim. The Court therefore GRANTS Plaintiff's motion for summary judgment on this element.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiff's motion for summary judgment (Dkt. No. 18) and DENIES Defendants' motion for summary judgment (Dkt. No. 22) as follows:

1. Plaintiff's motion on the first and second elements of his ADA claim is GRANTED.
2. Plaintiff's motion on the third element of his ADA claim is DENIED.
3. Plaintiff's motion on the first and fourth elements of his WLAD claim is GRANTED.
4. Plaintiff's motion on the second and third elements of his WLAD claim is DENIED.
5. Defendants' motion is DENIED in its entirety.

DATED this 24th day of February 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE